**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

JOHN DRENNAN                                                      PETITIONER
ADC #114017

v.                              Case No. 4:22-cv-01086-LPR-BBM

DEXTER PAYNE, Director,
Arkansas Division of Correction                                  RESPONDENT

**ORDER**

The Court has reviewed the Recommended Disposition (RD) submitted by United States Magistrate Judge Benecia B. Moore (Doc. 15) and Mr. Drennan's Objections (Doc. 24). After a *de novo* review of the RD, along with careful consideration of the Objections and the entire case record, the Court hereby approves and adopts the RD in its entirety as this Court's findings and conclusions in all respects. Accordingly, the operative Petition for Writ of Habeas Corpus (Doc. 3) is DISMISSED with prejudice and the Clerk of Court is instructed to close this case. A certificate of appealability will not be issued. Although the Court need not say any more than the foregoing, the Court wishes to make a few observations that either clarify the RD or otherwise support its analysis. These observations are in no particular order and are intended to be independent of each other.

1. Under Arkansas Rule of Evidence 403, the pertinent question is whether a piece of evidence's probative value is *substantially* outweighed by the danger of unfair prejudice. The Arkansas Supreme Court applied this evidentiary standard to the portion of Mr. Drennan's direct appeal at issue in Claim 1 of the operative federal habeas Petition.[1] It would be incorrect to read

---

[1] *See* Second Am. Pet. for Writ of Habeas Corpus (Doc. 3) at 6–9 (challenging exclusion of evidence concerning methamphetamine in victim Amber's body and on Amber's person at the time of the shooting); Ex. 4 (Ark. Sup. Ct. Op., CR-17-1011) to Resp. to Am. Pet. for Writ of Habeas Corpus (Doc. 12-17) at 9–10, 13 (Arkansas Supreme Court invoking the "substantially outweighed" language in considering the underlying evidentiary issue).

some of the language in the RD out of context and suggest that the RD was applying a different standard.[2]

2.  In his Objections, Mr. Drennan contends that the Arkansas Supreme Court did not perform a merits adjudication of his claim that "his constitutional right to present a defense was violated by the . . . refusal to permit him to present evidence that the deceased had methamphetamine in her system at the time of the incident."[3]  The RD does a solid job in explaining that—given the binding precedent concerning the scope of the constitutional right to present a defense—the Arkansas Supreme Court's merits adjudication of the Rule 403 issue was, in reality, a merits adjudication of the constitutional-right-to-present-a-defense issue.[4]  But it is also worth noting that, because Mr. Drennan received a life sentence, the Arkansas Supreme Court was statutorily "required to review the record for all objections, motions, and requests that were decided adversely to [Drennan]."[5]  The Court conducted that review and found "[n]o reversible error[s] . . . ."[6]

Accordingly, to the extent one could argue that the Arkansas Supreme Court's Rule 403 ruling was not a merits adjudication of the constitutional-right-to-present-a-defense issue, that issue was still presumptively adjudicated on the merits as part of the Arkansas Supreme Court's statutorily required review of the record.[7]  And the resolution of that issue against Mr. Drennan is

---

[2] *See, e.g.*, Doc. 15 at 21, 24.

[3] Doc. 24 at 1.

[4] *See* Doc. 15 at 20–23.

[5] Ex. 4 (Ark. Sup. Ct. Op., CR-17-1011) to Resp. to Am. Pet. for Writ of Habeas Corpus (Doc. 12-17) at 13.

[6] *Id.*

[7] The Court is sensitive to the fact that, unless properly cabined, this principle could open the federal habeas floodgates. It could be read as inviting a petitioner to argue that every issue decided against him at trial—even if not raised on appeal—has been exhausted in cases where the Arkansas Supreme Court is statutorily required to perform the whole-record review discussed above.  But this would be an overreading of the Court's point.  In the instant case, Mr. Drennan has been very clear that he explicitly raised the constitutional-right-to-present-a-defense issue in his direct appeal to the Arkansas Supreme Court.  *See* Second Am. Pet. for Writ of Habeas Corpus (Doc. 3) at 6.  It is only in this circumstance that the Court is comfortable relying on the Arkansas Supreme Court's statutorily required whole-record review to bolster the conclusion that the Arkansas Supreme Court performed a merits adjudication of the right-to-present-a-defense issue.  This type of limited reliance on the Arkansas Supreme Court's whole-record review is

not an unreasonable application of United States Supreme Court precedent governing the constitutional right to present a defense. First, fair-minded jurists could disagree as to underlying evidentiary call. Second, fair-minded jurists could disagree as to whether exclusion of the methamphetamine evidence denied Mr. Drennan a meaningful opportunity to present a complete defense or was "so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process."[8] In such circumstances, the Arkansas Supreme Court's resolution cannot and does not represent an unreasonable application of the relevant United States Supreme Court precedent.[9]

3. In his Objections, Mr. Drennan contends that Claims 3–6 should be addressed despite the fact that they are procedurally defaulted because "to do otherwise would result in a 'fundamental miscarriage of justice.'"[10] Specifically, Mr. Drennan argues that he "is actually innocent of these crimes" and a proper handling of his trial "would have established that [the] shooting was purely accidental."[11] This argument is forfeited. In his operative federal habeas Petition, Mr. Drennan did not discuss procedural default at all. In his Response, Respondent contended that Claims 3–6

---

consistent with limitations the Arkansas Supreme Court has itself imposed on conducting such reviews. *Cf. Cypert v. State*, 2025 Ark. 11, at 6–7, 705 S.W.3d 496, 499 ("[T]o carry out that [whole-record review] mandate, [the Arkansas Supreme Court's] own rules require both the State and appellant to identify all adverse rulings that the appellant has opted not to develop in briefing."); *Terry v. State*, 2020 Ark. 202, at 8, 600 S.W.3d 575, 580 (citing *Miller v. State*, 328 Ark. 121, 942 S.W.2d 825 (1997)) (noting that the whole-record review is still limited by issue preservation rules because the "review presupposes that a proper objection was made at trial"); *Kou Her v. State*, 2015 Ark. 91, at 5, 457 S.W.3d 659, 662 ("[O]ur [whole-record] review cannot serve as a substitute for defense counsel's responsibilities pursuant to *Anders* and Rule 4–3(k).").

[8] *Parker v. Bowersox*, 94 F.3d 458, 460 (8th Cir. 1996) (citing *Troupe v. Groose*, 72 F.3d 75, 76 (8th Cir. 1995)).

[9] *See, e.g.*, *Holmes v. South Carolina*, 547 U.S. 319 (2006); *Montana v. Egelhoff*, 518 U.S. 37 (1996) (plurality); *Michigan v. Lucas*, 500 U.S. 145 (1991); *Crane v. Kentucky*, 476 U.S. 683 (1986); *Chambers v. Mississippi*, 410 U.S. 284 (1973); *Washington v. Texas*, 388 U.S. 14 (1967); *Guinn v. Kemna*, 489 F.3d 351 (8th Cir. 2007).

[10] *See* Doc. 24 at 16–17. The Court adopts the RD's numbering system for the claims presented in the federal habeas Petition. Both the Petitioner and the RD agree as to what makes up Claim 1. As to the RD's reference to Claim 2, Petitioner calls that Claim II.A. As to the RD's references to Claims 3, 4, 5, and 6, Petitioner calls them Claims II.B., II.C., II.D., and II.E., respectively.

[11] Petitioner's Obj. (Doc. 24) at 16.

were all procedurally defaulted.[12]  Mr. Drennan did not file a Reply.  The upshot of all this is that, although he had an opportunity to do so, Mr. Drennan never argued to the Magistrate Judge that Claims 3–6 were not procedurally defaulted or that the procedural default should be excused.  And Mr. Drennan certainly never made a miscarriage-of-justice argument before the RD was issued.  Objections to an RD are not the place for new arguments.[13]

4.  In a perfect world, the RD's analysis in Subsection III(C)(2)(d) would not have included the last two sentences of the first paragraph of that Subsection.[14]  The Court is not convinced that the point made in those sentences is an appropriate consideration in the relevant analysis.  Nonetheless, excising those two sentences does not alter the propriety of the remaining analysis or the result.

IT IS SO ORDERED this 19th day of March 2026.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[12] *See* Resp. to Am. Pet. for Writ of Habeas Corpus (Doc. 12) at 31–36.  The RD explains the numbering mismatch between the Response and the RD.  *See* Doc. 15 at 40, 40 n.23.

[13] In any event, given the record of this case, we are not even in the same zip-code as a potentially viable miscarriage-of-justice exception to procedural default.  *See Schlup v. Delo*, 513 U.S. 298, 321 (1995) ("To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving, [the Supreme] Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.").  The miscarriage-of-justice exception is rarely applied, not only because it rests on a claim of actual innocence, but also because that claim must be premised on "'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'"  *Kidd v. Norman*, 651 F.3d 947, 951–52 (8th Cir. 2011) (quoting *Schlup*, 513 U.S. at 324).  Mr. Drennan has not presented any new evidence that would support a claim of actual innocence.  And, even if this Court could reevaluate the evidence at trial, that evidence does not come close to anything nearing actual innocence.  At trial, Amber's two children testified clearly that Mr. Drennan pointed the gun at Amber and shot her.  *See* Ex. 3-Part 4 (CR-17-1011 Trial Record) to Resp. to Second Am. Pet. for Writ of Habeas Corpus (Doc. 12-7) at 58, 101–03, 113.  Two trial witnesses testified that they observed Mr. Drennan and Amber fighting in the middle of a highway road before the shooting.  *Id.* at 5–8, 25–27, 32.  Right after shooting Amber, Mr. Drennan shot at a witness.  *Id.* at 60, 193–96.  He then fled into the woods abandoning the two children in the car.  *Id.* at 60–61, 103–05.  This is not the stuff of actual innocence.

[14] Doc. 15 at 36 ("Moreover, the jury took less than five hours to convict Drennan and just over forty minutes to sentence him to the maximum allowed by law.  This does not appear to have been a close case for the jury.").